PEOPLE v SMITH

1. CRIMINAL LAW—ARGUMENT OF COUNSEL—PROSECUTOR'S REMARKS—
   PREJUDICE—APPEAL AND ERROR—PRESERVING QUESTION—MIS-
   CARRIAGE OF JUSTICE.

   The absence of an objection in the trial court to a prosecuting
   attorney's allegedly prejudicial remarks during closing argu-
   ment precludes appellate review, unless the Court of Appeals'
   failure to consider the issue would result in a miscarriage of
   justice.

2. CRIMINAL LAW—ARGUMENT OF COUNSEL—PROSECUTOR'S REMARKS—
   PREJUDICE—MISCARRIAGE OF JUSTICE—INSTRUCTIONS TO JURY—
   APPEAL AND ERROR—PRESERVING QUESTION.

   The basic standard employed in determining whether a prosecut-
   ing attorney's allegedly prejudicial remarks during closing
   argument resulted in a miscarriage of justice is whether the
   allegedly prejudicial effect of the remarks could have been
   rectified by a curative instruction; if so, the failure to object is
   fatal to the claim on appeal.

3. CRIMINAL LAW—ARGUMENT OF COUNSEL—PROSECUTOR'S REMARKS—
   MISCARRIAGE OF JUSTICE—FAIR TRIAL.

   A closing argument by a prosecuting attorney characterizing the
   defendant in a trial for armed robbery as a "stickup artist" was
   not so prejudicial as to deny the defendant a fair trial; the
   allegedly prejudicial effects of the remarks could have been
   rectified by a curative instruction if requested and there was no
   miscarriage of justice.

4. TRIAL—READING TESTIMONY TO JURY—DISCRETION.

   The general rule is that when a jury requests that testimony be
   read back to it both the reading and extent of reading is a
   matter confided to the sound discretion of the trial judge; a jury
   will at times require testimony read back to it to resolve a

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 5 Am Jur 2d, Appeal and Error § 545.
   58 Am Jur 2d, New Trial § 56.
   75 Am Jur 2d, Trial § 192.
[4–6] 76 Am Jur 2d, Trial §§ 1041–1044.

disagreement or correct a memory failure, and a trial court must exercise its discretion to assure fairness and to refuse unreasonable requests but it cannot simply refuse to grant the jury's request for fear of placing too much emphasis on the testimony of one or two witnesses.

5. Trial—Reading Testimony to Jury—Refusal to Reread Testimony—Discretion.

Completely foreclosing the possibility of having any testimony reread to the jury before the jury has retired was erroneous because the trial court failed to recognize that it had discretion to grant or refuse a jury's request for a rereading of particular excerpts of testimony and failed or refused to exercise such discretion.

6. Trial—Criminal Law—Reading Testimony to Jury—Refusal to Reread Testimony—Harmless Error.

A trial court's error in stating before the jury retired that he would refuse to reread to the jury any portion of the trial testimony was harmless beyond a reasonable doubt in a trial for robbery, and no miscarriage of justice occurred where an independent reading of the record fails to reveal any confusion or ambiguity as to the testimony of the witnesses, three victims of the robbery testified as to the events surrounding the robbery, all three witnesses identified the defendant as one of the perpetrators of the robbery, the defendant interposed an alibi defense, and the jury resolved the question of credibility against the defendant by reaching a verdict of guilty in less than two hours, after a trial of almost four days.

Appeal from Recorder's Court of Detroit, Henry Heading, J. Submitted June 16, 1975, at Detroit. (Docket No. 20845.) Decided October 14, 1975. Reversed, 396 Mich 109.

Henry L. Smith was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and

*Timothy A. Baughman,* Assistant Prosecuting At-
torney, for the people.

*Carl Ziemba,* for defendant.

Before: T. M. BURNS, P. J., and QUINN and M. J.
KELLY, JJ.

T. M. BURNS, P. J. On March 26, 1974, defendant
was jury-convicted of armed robbery. MCLA
750.529; MSA 28.797. He was sentenced on April
17, 1974, to a term of 7-1/2 to 20 years in prison
and now appeals as of right raising two assign-
ments of error.

Defendant first claims on appeal that certain
remarks made by the prosecutor during closing
argument were so prejudicial as to deny him his
right to a fair trial.

In his closing argument, the prosecutor stated:

"The thing that is really interesting—and Mr. Smith
just volunteered it in answer to one of the defense
counsel's questions, sort of added it as an afterthought
—'Well I didn't even drive that night.'

"Why is that important? Consider this: What better
job or better scheme for a stickup artist than to be
working at a party store where there is no time clock,
so you get paid even if you are not there, you take off
for a half an hour, an hour, 45 minutes, skip down to
some place and rob it and (whistling) right back."

Defendant contends that the characterization of
him as a "stickup artist" was prejudicial and
requires reversal. However, defendant neither ob-
jected to this remark nor requested a curative
instruction from the trial court. In *People v
Pacely,* 51 Mich App 67, 71; 214 NW2d 561, 562–
563 (1974), this Court stated:

"The absence of an objection [to the prosecutor's remarks in his closing argument] in the trial court precludes appellate review, unless this Court's failure to consider the issue would result in a miscarriage of justice. The basic standard employed in determining whether the remarks resulted in a miscarriage of justice is whether the allegedly prejudicial effect of the remarks could have been rectified by curative instruction. If so, the failure to object is fatal to the claim on appeal."

While we think that it would have been best for the prosecutor to have omitted the statement in question from his closing argument, we do not think that it was so prejudicial as to deny defendant a fair trial. The allegedly prejudicial effects of the remarks could have been rectified by a curative instruction. We find no miscarriage of justice present in the case at bar. See *People v Gould,* 61 Mich App 614; 233 NW2d 109 (1975) [defendant referred to as a "dope dealer"], *People v Davis,* 57 Mich App 505; 226 NW2d 540 (1975) [defendant referred to as a "brutal killer"], *People v Giacalone,* 52 Mich App 428; 217 NW2d 444 (1974) [defendants described as "pros"], *People v Plozai,* 50 Mich App 131; 212 NW2d 721 (1973) [defendant labeled as a "murderer"].

We now come to defendant's final and most serious allegation of error. Upon completion of its charge to the jury but prior to the time the jury started its deliberations, the trial court said:

"Now before you go in, I will not reread any testimony, so don't ask for that. If there is a question of law, all you will have to do is rap on the door and I will bring you back out and explain that to you. A question of law, but not a question of fact. Do we understand that? All right. Will you kindly step inside the jury room."

Defendant maintains that the trial court's action in categorically refusing to reread any portion of the trial testimony constitutes reversible error.

In *People v Howe,* 392 Mich 670; 221 NW2d 350 (1974), the trial court refused to reread the testimony of two witnesses as requested by the jury. The Court first reiterated the rule that when a jury requests testimony to be read back to it, both the reading and the extent of the reading is a matter confided to the sound discretion of the trial court. *Howe, supra,* at 675. The Court went on to hold that the trial court's refusal to reread testimony constituted an abuse of discretion where the trial court failed to consider the jury's reasonable request. *Howe, supra,* at 677. In so holding, the Court said:

"a jury will at times require testimony read back to it to resolve a disagreement or correct a memory failure. A trial court must exercise its discretion to assure fairness and to refuse unreasonable requests; but it cannot simply refuse to grant the jury's request for fear of placing too much emphasis on the testimony of one or two witnesses." 392 Mich at 676; 221 NW2d at 352.

If it is error for a trial court to refuse a jury's request for a rereading of particular excerpts of testimony on the ground that undue emphasis might be placed on the same, *a fortiori,* it is error where the trial court, before the jury has retired to consider its verdict, completely forecloses the possibility of having any testimony reread. This is what happened in the case at bar, and accordingly we find that the trial court erred in failing to recognize that it had such discretion and, therefore, in failing or refusing to exercise it.

The question now arises as to whether or not the error was harmless beyond a reasonable doubt.

MCLA 769.26; MSA 28.1096. The *Howe* Court, in concluding that reversible error had occurred, stressed the fact that the jury was in fact confused as to the testimony of two witnesses. After an independent reading of the requested testimony, the Court agreed that there was confusion present in the questioning and the witnesses' answers and, therefore, concluded that the error was not harmless beyond a reasonable doubt. *Howe, supra,* at 678.

Such is not the case here. Our independent reading of this record fails to reveal any confusion or ambiguity as to the testimony of the witnesses. The three victims of the armed robbery all testified as to the events surrounding said robbery. These three witnesses all identified the defendant as one of the perpetrators of the robbery. Defendant, on the other hand, interposed an alibi defense claiming he was at work at the time of the robbery. The jury was thus presented with a classic credibility question, a question they resolved against the defendant.

As further evidence of our conclusion that no confusion was present in the case at bar, we note that while this trial lasted almost four days, the jury reached its verdict in less than two hours. The totality of circumstances present in the instant case convinces us that no miscarriage of justice occurred. After looking at the record as a whole, we conclude that the trial court's error in refusing to reread any portion of the trial testimony was harmless beyond a reasonable doubt.

Defendant's conviction is affirmed.