PEOPLE v MARTIN

OPINION OF THE COURT

1. TRIAL—JURY—REREADING TESTIMONY TO JURY—DISCRETION.

The granting of a jury's request for the rereading of trial testimony is discretionary; requesting a jury to resume deliberations without rehearing testimony with the knowledge that if necessary the jury's request would be considered at a later time is a proper exercise of judicial discretion.

2. TRIAL—JURY—REREADING TESTIMONY TO JURY—INSTRUCTIONS TO JURY—ALLEN CHARGE—JUROR'S DUTY.

Supplemental instructions directing a jury to recall trial testimony and to listen to collective recall of the testimony, but, "If you have to have it read back in a little while, please send a note and indicate that", is an instruction similar to an Allen-charge; the instruction is not erroneous because it could not cause a juror to abandon his conscientious dissent and defer to the majority solely for the sake of reaching agreement.

CONCURRENCE IN PART, DISSENT IN PART BY N. J. KAUFMAN, P. J.

3. TRIAL—REREADING TESTIMONY TO JURY—DISCRETION.

A trial court may properly request a jury to resume deliberations without granting their request to rehear the testimony of certain witnesses; it is within the court's discretion to reconsider the jury's request at a later time.

4. CRIMINAL LAW—INSTRUCTIONS TO JURY—STANDARD JURY INSTRUCTIONS—SUBSTANTIAL DEPARTURE—APPEAL AND ERROR.

*A substantial departure by the trial judge from the jury instruction concerning juror agreement adopted by the Supreme Court from the American Bar Association Standard Jury Instructions may cause a juror to abandon his conscientious dissent and defer to the majority solely for the sake of reaching agreement;*

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 76 Am Jur 2d, Trial §§ 1041–1043.
[2, 4] 76 Am Jur 2d, Trial §§ 1060–1062.
[5] 5 Am Jur 2d, Appeal and Error § 811.

*such a departure results in reversible error (ABA Standard
Jury Instructions 5.4).*

5. CRIMINAL LAW—HARMLESS ERROR—APPLICATION.

*The Court of Appeals may not properly apply the harmless error
doctrine to a factual situation where the Supreme Court has
previously ruled that the doctrine is inapplicable to an identi-
cal factual situation.*

Appeal from Recorder's Court of Detroit, Dalton
A. Roberson, J. Submitted February 1, 1977, at
Detroit. (Docket No. 28764.) Decided July 19, 1977.

Charles Martin was convicted of armed robbery.
Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Edward R. Wilson,* Re-
search, Training and Appeals, and *Timothy A.
Baughman,* Assistant Prosecuting Attorney, for
the people.

*Hoffa, Chodak & Robiner,* for defendant.

Before: N. J. KAUFMAN, P. J., and V. J. BRENNAN
and M. D. O'HARA,* JJ.

PER CURIAM. On March 30, 1976, defendant was
convicted by a jury of robbery armed, contrary to
MCLA 750.529; MSA 28.797, and sentenced to a
term in prison of not less than 7-1/2 nor more
than 15 years. Defendant appeals as of right.

The evidence indicates that on November 7,
1975, at approximately 8 p.m. a Kentucky Fried
Chicken restaurant located on East Warren Ave-
nue in the City of Detroit was robbed. At trial four
people who were witnesses to the occurrence iden-

---

* Former Supreme Court Justice, sitting on the Court of Appeals by
assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

tified defendant as the man who ordered some chicken, pulled a gun, pointed it at an employee, Randolph Evans, and ordered him to open the safe. The safe was opened and the robber escaped with some money. Defendant also admitted to one of the eyewitnesses, who testified to that, that he had robbed this branch of Kentucky Fried Chicken.

Shortly after the jury began deliberations the jury sent a note to the judge informing him that they would like to hear the testimony of "Randy Evans and Andrew Gaines to clarify points" and "we would also like to hear Mark's testimony". The judge properly exercised his discretion and requested the jury to resume deliberations without rehearing the testimony of the three witnesses with the knowledge that if necessary the judge would consider the jury's request at a later time. *People v Howe*, 392 Mich 670; 221 NW2d 350 (1974).

The judge then proceeded to give the jury supplemental instructions directing them to recall the testimony, to listen to the collective recall of the testimony, but,

"If you have to have it read back in a little while, please send a note and indicate that."

This instruction, similar to an Allen-charge[1], could not cause a juror to abandon his conscientious dissent and defer to the majority solely for the sake of reaching agreement.

If there was error here, and we fail to see it, it was harmless because of the overwhelming convicting evidence. Conviction affirmed.

Affirmed

---

[1] *Allen v United States,* 164 US 492; 17 S Ct 154; 41 L Ed 528 (1896).

N. J. KAUFMAN, J. *(concurring in part, dissenting in part).* Defendant was convicted after a jury trial of armed robbery, MCLA 750.529; MSA 28.797. He was sentenced to a prison term of not less than 7-1/2 nor more than 15 years. He now appeals by right.

On appeal, defendant propounds two claims upon which he urges reversal. The first claim arises from the following situation: Shortly after the jury began deliberations, the jury sent a note to the judge informing him that they would like to hear the testimony of "Randy Evans and Andrew Gaines to clarify points" and "we would also like to hear Mark's testimony". Defendant's first argument is bottomed on the trial judge's refusal to accede to the jury's request.

I agree with the majority opinion that the trial court properly exercised its discretion in requesting the jury to resume deliberations without re-hearing the testimony of the three witnesses with the knowledge that, if necessary, the judge would consider the jury's request at a later time. *People v Howe,* 392 Mich 670; 221 NW2d 350 (1974).

However, I believe that the trial court committed reversible error when it gave the following supplemental instruction:

"I do not think that we have reached the drastic point where I will start reading back testimony to you yet.

"Further, maybe I can't explain it to you, but *I should explain it to you as jurors you are required to depend on your collective recall of all the jurors, and that is one juror can't say I recall the testimony this way and unless I hear it read back to me I'm not going to change my mind.*

"Do you understand what I'm saying? You have to discuss it among yourselves and you have to, you might

not remember. I told you yesterday when we started out that it was an important case and that you listen to the testimony because now if you didn't hear something, you think that you might have heard something, one way or the other, and there is [sic] seven or eight of the jurors that say no, it wasn't that way, or it wasn't this way, it was this way or whatever might be said, I'm not trying to tell you how to present it to you, but you have to rely on that.

"Okay, because it would take as long as it took for the trial to read it all back to you. I don't think we have reached that drastic a measure yet.

"If you have to have it read back in a little while, please send a note and indicate that.

"Please go back into the Jury Room." (Emphasis added.)

In *People v Sullivan,* 392 Mich 324, 342; 220 NW2d 441 (1974), the Supreme Court explicitly warned against the utilization of this type of charge:

"However, we are persuaded that any possible future danger of coercive effect by the giving of an *Allen-*[1]type charge is one which can and should be avoided. An analysis of recent cases and commentaries confirms our belief that the better practice is to be found in the recommended ABA jury standard 5.4.

"Therefore, prospectively from the date of this opinion, the ABA standard jury instruction 5.4 as set forth herein is adopted by this Court. Any substantial departure therefrom shall be grounds for reversible error."

I am convinced that the instant charge was a substantial departure from the ABA standard. The obvious result of such a charge is to "cause a juror to abandon his conscientious dissent and defer to the majority solely for the sake of reaching agree-

[1] *Allen v United States,* 164 US 492; 17 S Ct 154; 41 L Ed 528 (1896).

ment * * * . Such results obviously have no place in a fair criminal justice system", *Sullivan,* p 334. I therefore must dissent from the majority's conclusion as to this issue.

The majority opinion further holds that even if there was error here, it was "harmless because of the overwhelming convicting evidence". I cannot agree. I believe that the harmless error doctrine is as inappropriate to this case as it was in *People v Henry Smith,* 396 Mich 109, 110; 240 NW2d 202 (1976). There:

"The Court of Appeals * * * found no 'confusion or ambiguity as to the testimony of witnesses,' noted that the jury reached its verdict in less than two hours, and concluded that the 'totality of circumstances * * * convinces us that no miscarriage of justice occurred.' "

I believe that a fair interpretation of this Court's reasoning in *Smith, supra,* disapproved of by the Supreme Court, shows this Court's rationale in *Smith* to be indistinguishable from the majority's reasoning. Therefore, I would reverse and remand for a new trial.